2005 ND 221

**In the Matter of the Petition to Change the RESIDENT CHAMBERS FOR DISTRICT JUDGESHIP NO. 7, NORTHWEST JUDICIAL DISTRICT, from Stanley, North Dakota, to Minot, North Dakota.**

**In the Matter of the Judicial Vacancy in District Judgeship No. 7, with Chambers in Stanley, North Dakota, Northeast Judicial District.**

Nos. 20050304, 20050361.

Supreme Court of North Dakota.

Dec. 20, 2005.

PER CURIAM.

[¶ 1] On September 7, 2005, a Petition for Transfer and Filling of Judgeship No. 7, from Stanley, North Dakota, to Minot, North Dakota, effective January 1, 2007, was filed by Dixie K. Knoebel, Trial Court Administrator for Administrative Unit 4. Proof of notice of the filing of the petition under N.D. Sup. Ct. Admin. R. 7.1 was filed October 14, 2005. Under N.D.C.C. § 27–05–08, this Court has the authority to determine the location of the chambers of the state's district judges.

[¶ 2] On October 17, 2005, the Honorable Robert W. Holte, Judge of the District Court, officially notified the Chief Justice that he would not be seeking re-election to Judgeship No. 7, with chambers in Stanley, North Dakota, Northwest Judi-cial District, because he would be retiring when his current term expires on December 31, 2006. Judge Holte's retirement will create a vacancy under N.D.C.C. § 27–05–02.1.

### I. Judicial Vacancy

[¶ 3] The question of whether the office is necessary for effective judicial administration in the Northwest Judicial District must first be determined before addressing the petition to transfer the judgeship from Stanley to Minot. Under N.D.C.C. § 27–05–02.1, this Court is required to review vacancies that occur and determine, within 90 days of receiving notice of a vacancy, whether the office is necessary for effective judicial administration. This Court may, consistent with that determination, order the vacancy filled in its current location or order the vacant office transferred to any location in which a judge is necessary for effective judicial administration. N.D.C.C. § 27–05–02.1(5).

[¶ 4] Under N.D. Sup. Ct. Admin. R. 7.2, notice of a written consultation with the attorneys and judges of the Northwest Judicial District was posted October 24, 2005, on the website of the Supreme Court. Notice was also electronically provided to all presiding judges of the state. Written comments on the vacancy were permitted through November 28, 2005. For purposes of the consultation provided for under N.D.C.C. § 27–05–02.1, this procedure is sufficient for determining the disposition of the vacancy.

[¶ 5] Caseload and population information for the Northwest Judicial District, and other criteria identified in N.D. Sup. Ct. Admin. R. 7.2, § 4, were received in the petition to transfer the judgeship on September 7, 2005. Our weighted caseload study determines the amount of judicial resources needed to handle cases after

weighting each type of case by the amount of time required to process an average case of that type. It also takes into account time not available for handling cases but which is required from a judge, such as travel time and time to handle administrative matters. The caseload study shows that the Northwest Judicial District is one of the districts experiencing a shortage of judicial FTEs (full-time equivalents).

EXCESS (SHORTAGE) OF JUDICIAL FTEs

|  | EC | NEC | NE | NW | SC | SE | SW | Total |
|---|---|---|---|---|---|---|---|---|
| 2002 | (0.25) | 1.48 | 0.82 | 0.29 | - | (0.82) | 0.05 | 1.57 |
| 2003 | (0.82) | 1.42 | 0.46 | (0.91) | (1.04) | (0.96) | (0.08) | (1.93) |
| 2004 | (2.10) | 1.30 | 0.23 | (0.58) | (0.97) | (1.35) | (0.08) | (3.55) |
| Jan-Oct 2004 | (1.91) | 1.59 | 0.38 | (0.53) | (0.79) | (1.29) | (0.20) | (2.75) |
| Jan-Oct 2005 | (2.02) | 0.95 | 0.18 | (1.27) | (1.82) | (1.22) | (0.34) | (5.54) |

Although other districts also have a shortage, we determine moving a judgeship from the Northwest Judicial District would leave that district with the most severe shortage in the state, making it extremely difficult to provide effective judicial services to residents in that district.

[¶ 6] Under the criteria of N.D. Sup. Ct. Admin. R. 7.2, § 4, the Court has considered all submissions received by the Court and its own administrative records. We determine that Judgeship No. 7 is necessary for effective judicial administration in the Northwest Judicial District.

## II. Chamber Location

[¶ 7] Notice of a written comment period on the petition to transfer chambers was posted October 17, 2005, on the website of the Supreme Court. Notice was also published in the Mountrail County Promoter and the Minot Daily News. Written comments on the petition were permitted through November 28, 2005. Upon request for a hearing and after further notice, a hearing concerning the possible transfer of Judgeship No. 7 was held in the Ralph J. Erickstad Courtroom of the Supreme Court on December 15, 2005.

[¶ 8] Section 4 of N.D. Sup. Ct. Admin. R. 7.1, provides the criteria for consider-ation in designating resident district court judgeship chambers. Of the criteria identified in N.D. Sup. Ct. Admin. R. 7.1, § 4, factors a, b, i, j, k, and *l*, indicate the chambers of Judgeship No. 7 should be relocated. The remaining factors are either neutral or do not apply.

**a. Annual district court combined civil, criminal and formal juvenile caseload for the most recent three-year period and any discernible caseload trends or patterns.**

[¶ 9] As updated through October 30, 2005, the weighted caseload study shows a shortage of judge time in every county in the Northwest Judicial District except Mountrail County. While Mountrail County will show a shortage if the chamber is transferred, that shortage will be less than the current shortage in Ward County. The other factors such as travel time and the anticipated addition of a drug court in Ward County indicate that it is better use of judicial resources to have the judge chambered in Minot. The following charts summarize our weighted caseload results for the years 2002 through 2004 and compare the partial years of January through October in 2004 and 2005.

| NW Judicial District (comprising Burke, Divide, McKenzie, Mountrail, Ward and Williams Counties) | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|
| Weighted Filings | 444,669 | 524,287 | 502,152 | 416,065 | 456,623 |
| Excess (Shortage) of Judicial FTE | 0.29 | (0.91) | (0.58) | (0.53) | (1.27) |

[¶ 10]  If the weighted caseload statistics are examined on a county by county basis, it is apparent that the shortage of judicial FTEs is primarily in Ward County.

| Mountrail County | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|
| Weighted Filings | 23,309 | 24,206 | 27,531 | 22,864 | 21,817 |
| Excess (Shortage) of Judicial FTE | 0.65 | 0.64 | 0.59 | 0.59 | 0.61 |

| Ward County | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|
| Weighted Filings | 282,190 | 320,072 | 313,836 | 256,998 | 271,022 |
| Excess (Shortage) of Judicial FTE | (0.27) | (0.84) | (0.74) | (0.66) | (0.91) |

[¶ 11]  The Northwest Judicial District as a whole is impacted by a substantial increase in misdemeanor, felony, and juvenile filings.  Our weighted caseload studies show there has been an increase in misdemeanor and felony filings and in proceedings in juvenile court.  Juvenile matters and felonies are assigned significant case weight because of the judicial hours required to adjudicate those cases.

| NW Judicial District | Case Weight | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|---|
| Felonies | 133.98 | 421 | 647 | 575 | 425 | 587 |
| Misdemeanors | 28.70 | 2868 | 3615 | 3195 | 2793 | 2817 |
| Juvenile Dependency | 223.94 | 45 | 105 | 96 | 89 | 117 |
| Juvenile Delinquency | 117.76 | 178 | 205 | 177 | 128 | 146 |

| Mountrail County | Case Weight | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|---|
| Felonies | 133.98 | 2 5 | 17 | 20 | 15 | 15 |
| Misdemeanors | 28.70 | 194 | 243 | 228 | 177 | 195 |
| Juvenile Dependency | 223.94 | 6 | 1 | 0 | 0 | 2 |
| Juvenile Delinquency | 117.76 | 5 | 14 | 8 | 6 | 2 |

| Ward County | Case Weight | 2002 | 2003 | 2004 | Jan-Oct 2004 | Jan-Oct 2005 |
|---|---|---|---|---|---|---|
| Felonies | 133.98 | 257 | 361 | 340 | 256 | 358 |
| Misdemeanors | 28.70 | 1923 | 2364 | 2174 | 1749 | 1644 |
| Juvenile Dependency | 223.94 | 21 | 61 | 64 | 58 | 62 |
| Juvenile Delinquency | 117.76 | 119 | 122 | 101 | 77 | 96 |

Activities involving our criminal and juvenile justice systems are greater where the average age of the population is younger.  *See* North Dakota Office of Attorney General, Bureau of Criminal Investigation, *Crime in North Dakota, 2003: A Summary of Uniform Crime Report Data,* available at *http://www.ag.state. nd.us/Reports/BCI Reports/Crime03.pdf* (last visited Dec. 20, 2005).  As indicated in factor j,

because of the median age of the county populations within the district, this demand will fall most heavily on Ward County.

**b.  Number and location of attorneys.**

[¶ 12]  The following distribution of attorneys in the district indicates the continued need for more judges chambered in Minot.

| | |
|---|---|
| Burke | 0 |
| Divide | 1 |
| McKenzie | 3 |
| Mountrail | 9 |
| Ward | 101 |
| Williams | 40 |

**i.  and k. Impact of any change of chamber on travel time for judges, court personnel, attorneys, and litigants.  Impact on affected judicial system employees (juvenile, transcript preparation, and clerks of district court).**

[¶ 13]  The petition of the trial court administrator indicates that on average Judge Robert W. Holte spends three days out of every work week in Minot, which requires Judge Holte and his secretary/recorder to travel approximately 15,000 miles per year.  While we were advised at hearing that litigants in Minot have not been inconvenienced by Judge Holte's travel, that is true only because of the great personal sacrifice of Judge Holte and his staff who have had to extend their work days to be available during normal work hours in Minot.  Travel also has a cost to the judicial budget.  The judge's and staff's expenses of travel to a non-chambered city, as well as the overtime incurred by staff during that travel, are paid by the state.  Moving chambers to the location of the greatest judicial demand will most efficiently use both judicial and staff time.

**j.  Population distribution in the judicial district or de facto subdistrict.**

[¶ 14]  The State Data Center of North Dakota State University, which prepares population estimates by counties, shows that the current distribution of judicial work is unlikely to change through 2015.  The population count for 2000 as well as the population projections for the counties in this judicial district are as follows:

| | 2000 Count | 2005 Projection | 2010 Projection | 2015 Projection |
|---|---|---|---|---|
| Burke | 2242 | 2024 | 1908 | 1780 |
| Divide | 2283 | 2006 | 1796 | 1600 |
| McKenzie | 5737 | 5391 | 5197 | 5033 |
| Mountrail | 6631 | 6492 | 6518 | 6516 |
| Ward | 58795 | 57427 | 56728 | 56349 |
| Williams | 19761 | 18556 | 17959 | 17318 |

*See* North Dakota State Data Center, *Population Projections in North Dakota: 2005–2020*, available at *http://www.ndsu. nodak.edu/sdc/ publications/ population/18_9 release.pdf* (last visited Dec. 20, 2005).

[¶ 15]  Although Mountrail County is projected to have a slight increase from 2005 to 2010 and Ward County a slight decrease for that period, the distribution of population in the district will continue to concentrate in Ward and Williams counties.

[¶ 16]  It is also significant that the median age of the population is lowest in Ward County as our weighted caseload study has shown significant increases in

juvenile filings and criminal filings. The statistics compiled by the Attorney General show a consistent and significant drop in arrests after age 54. *See Crime in North Dakota, 2003: A Summary of Uniform Crime Report Data,* pg. 46, available at *http://www.ag. state.nd.us/ Reports/BCIReports /Crime03.pdf* (last visited Dec. 20, 2005).

| Median Age in Years, 2000 | |
|---|---|
| Burke | 47.5 |
| Divide | 49.0 |
| McKenzie | 39.5 |
| Mountrail | 39.6 |
| Ward | 32.4 |
| Williams | 39.8 |

*See* North Dakota State Data Center, *Median Age in North Dakota: 1950 to 2000,* available at *http://www.ndsu. nodak.edu/sdc/ publications/ population/17_6.pdf* (last visited Dec. 20, 2005).

**l. Recommendation of the presiding judge of the judicial district, after consultation with the judges of the district court.**

[¶ 17] Both presiding judge William W. McLees and his immediate predecessor as presiding judge, Robert W. Holte, support the relocation of chambers to Minot. Both judges understand and appreciate the significance of the concerns of rural North Dakota, having been chambered in rural locations. Both have also expressed their commitment to the continued provision of judicial services in all counties of the district through regularly-scheduled attendance in each county.

[¶ 18] At hearing, participants who spoke in favor of retaining the judgeship in Stanley addressed the impact of increased activity in the oil fields of western North Dakota and the importance of relationships among the state courts, the tribal court, and members of the Three Affiliated Tribes at Fort Berthold Indian Reservation. We acknowledge these valid and important concerns. The source cited in the written submission to the court (North Dakota Sales and Use Tax Statistical Report, Second Quarter 2005, Office of State Tax Commissioner, available at http:// www.nd.gov/ tax/salesanduse/pubs /reports/2005-2- stat-report.pdf) (last visited Dec. 20, 2005) indicates increased economic activity in each county of the district when compared with the prior year. To some extent, increased economic activity in the district is reflected in our recent weighted caseload studies and those studies support the relocation of the judgeship. We trust that all judges in the district will continue to recognize the importance of the continuing working relationships between state and tribal governments including our respective court systems.

[¶ 19] This petition was brought by the trial court administrator for Unit 4, and is supported by the presiding judge in consultation with district judges and the judicial referee of the Northwest Judicial District. While transfer of the chambers can be understandably difficult on the community and the area bar, the individuals who provide judicial services in the district understand the need to allocate the available judicial resources in the most effective and efficient manner. The assessment of the trial court administrator is supported by the information we have reviewed.

[¶ 20] IT IS HEREBY ORDERED, that Judgeship No. 7 of the Northwest Judicial District be filled by election, and that this office appear on the 2006 primary and general election ballots in North Dakota, and effective January 1, 2007, the chambers be transferred from Stanley to Minot, North Dakota.

[¶ 21] The transfer of the Stanley judgeship is ordered with the intent and

confidence that the Honorable William L. McLees, Presiding Judge of the Northwest Judicial District, together with the other judges of the district and their successors, will continue to provide, through assignment, routine and effective judicial services to all counties in the judicial district.

[¶ 22] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.