2017 ND 181

**In the MATTER OF the VACANCY IN JUDGESHIP NO. 6, with Chambers in**

Grafton, North Dakota, Northeast Judicial District

No. 20170158

Supreme Court of North Dakota.

Filed 7/24/2017

Per curiam.

[¶1] On April 25, 2017, Governor Doug Burgum notified the Supreme Court of the retirement of the Honorable M. Richard Geiger, Judge of the District Court, with chambers in Grafton, Northeast Judicial District, effective October 1, 2017. Judge Geiger's retirement creates a vacancy under Section 27-05-02.1, N.D.C.C.

[¶2] Under Section 27-05-02.1, N.D.C.C., this Court is required to review judicial vacancies that occur and determine, within 90 days of receiving notice of a vacancy, whether the office is necessary for effective judicial administration. This Court may, consistent with that determination, order a vacancy filled or order the vacant office transferred to another judicial district in which an additional judge is necessary, or abolish a vacant judicial office, with or without a transfer.

[¶3] Under N.D. Sup. Ct. Admin. R. 7.2, notice of a written consultation with attorneys and judges and other interested persons in the Northeast Judicial District was posted May 23, 2017, on the website of the Supreme Court regarding the vacancy created by Judge Geiger's retirement in Judgeship No. 6. Notice was also electronically provided to all presiding judges of the state. Written comments on the vacancy were permitted through June 19, 2017. This procedure is sufficient for purposes of the consultation required under Section 27-05-02.1, N.D.C.C.

[¶4] Comments supporting filling the vacancy in the current location were received, and a Report containing population and caseload trends, and other criteria identified in N.D. Sup. Ct. Admin. R. 7.2, Section 4, was filed June 8, 2017, by the Northeast Judicial District. The State Court Administrator provided statewide weighted caseload statistics through May 2017. No comments or petitions were received to relocate this vacancy.

[¶5] The Court recently considered another judicial vacancy in the Northeast Judicial District. On April 14, 2017, based on the information provided in that matter, the Court filled a judicial vacancy in Rugby, North Dakota. See, *Vacancy in Judgeship No. 2, Northeast Judicial District*, 2017 ND 85, 892 N.W.2d 886. We take judicial notice of the information contained in that file.

[¶6] According to the district's report, under the local rules, Judgeship No. 6 is responsible for all the caseload with Walsh County, and is primarily assigned to cases in Cavalier and Pembina Counties. Judgeship No. 6 also is required to cover other matters throughout the other ten counties in the district when a judge recuses or a timely demand for change of judge is filed.

[¶7] The current weighted caseload filings continue to show a slight decrease in the Northeast Judicial District, and a corresponding decrease in judicial officer need. The 2017-16 average weighted caseload shows a statewide judicial officer shortage of 9.13. This is an overall reduction in judicial officer need of 0.79 as compared to the 2015-16. While the Northeast Judicial District is currently showing an slight overage in judicial officer need, the administrative challenges in providing timely judicial service to large, rural districts do not now favor the elimination of this judgeship.

[¶8] Under the criteria of Section 4 of N.D. Sup. Ct. Admin. R. 7.2, the Court has

considered all submissions received by the Court and its own administrative records on state-wide weighted caseload data.

[¶9] Based on the record before us, this Court determines the office is necessary for effective judicial administration in the Northeast Judicial District.

[¶10] IT IS HEREBY ORDERED, that Judgeship No. 6 at Grafton in the Northeast Judicial District be filled in the manner provided by N.D.C.C. Chapter 27-25.

[¶11] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Jerod E. Tufte

Lisa Fair McEvers

Crothers, Justice, dissenting.

[¶12] I respectfully disagree with the Court's conclusion that Judgeship No. 6 with chambers in Grafton should be retained and filled under N.D.C.C. ch. 27-25. I would transfer the judgeship to the Northeast Central Judicial District with chambers in Grand Forks. I acknowledge such a transfer would create a judge surplus in the Northeast Central Judicial District. However, the appointment of Presiding Judge Jensen to this Court soon will create another vacancy in that judicial district.

[¶13] In proceedings regarding the impending vacancy in Grand Forks, I would provide notice that the Court is considering amending N.D. Sup. Ct. Admin. R. 6 by moving Walsh County from the Northeast Judicial District to the Northeast Central Judicial District. I also would provide notice that the Court is considering relocating Judge Jensen's position to an-

other location in the state showing a greater need for additional judicial services. I am not irrevocably committed to either of those events occurring, but for the reasons explained below I believe circumstances require serious consideration of both outcomes.[1]

[¶14] Here, our Notice explained we were exploring possibilities that included transferring the judgeship to a different district or abolishing the position "with or without transfer of a district judgeship to any location . . . ." Notice of Consultation, ¶ 2. The Majority notes no petition was received to relocate the judgeship. Majority opinion, ¶ 4. While true, the lack of a request neither prevents nor excuses this Court from best administering all judicial branch resources. N.D. Const. art. VI, §§ 1-3; N.D.C.C. § 27-05-02.1. To the contrary, the law requires that we inquire whether the judgeship at issue is necessary at its current location. See N.D.C.C. § 27-05-02.1(1) ("when a vacancy occurs in the office of district court judge, the supreme court shall determine . . . whether that office is necessary for effective judicial administration or whether the district judgeship may be transferred to another location to fulfill a need for judicial services.").

[¶15] We have authority to transfer an existing judgeship to another judicial district. See N.D.C.C. § 27-05-02.1(1)(b) ("The supreme court may . . . order that . . . . The vacant office be transferred to a judicial district in which an additional judge is necessary for effective judicial administration, and that the vacancy be filled in the manner provided pursuant to chapter 27-25 with respect to that judicial district.");

1. The majority here has determined to retain the judgeship in Walsh County. In this Court's exercise of its obligation to manage judicial branch resources, during our review of the vacancy created by Judge Jensen's move to this Court, we still should consider transferring Walsh County to the Northeast Judicial District during the proceedings for the vacancy created by Judge Jensen's appointment to the Supreme Court.

*Majority opinion,* ¶ 2. We also have authority to move a residential judicial chamber. N.D.C.C. § 27-05-08(1) ("The locations of the chambers of the district judges in each of the respective districts shall be as determined by rule of the supreme court."). According to this authority, we have adopted an administrative rule addressing the "resident district court judgeship chambers within the judicial districts of North Dakota." N.D. Sup. Ct. Admin. R. 7.1. Our Notice of Consultation advised that transfer of the Walsh County judgeship was open for consideration.

[¶16] We long have recognized that no community wants to lose a judgeship. *See In re Resident Chambers for Dist. Judgeship No. 7, Northwest Judicial Dist.,* 2005 ND 221, ¶ 19, 707 N.W.2d 251 ("While transfer of the chambers can be understandably difficult on the community and the area bar, the individuals who provide judicial services in the district understand the need to allocate the available judicial resources in the most effective and efficient manner."). We as a society also tend to prefer the status quo over a change, and maintaining the status quo would leave resident district court chambers in their current locations. However, legislative appropriations, technology, location of lawyers, community facilities, location of social, civil and criminal justice resources, and the speed and ease of travel all suggest to me that the status quo is not a viable option given the availability and distribution of judicial resources.

[¶17] The 2017 legislative session resulted in the judicial branch losing 35.5 employees. *See* Judicial Budget, Budget No. 180 of Senate Bill No. 2002, House Bill No. 1024, available at http://www.legis.nd.gov/files/fiscal/2017-19/docs/180.pdf. State employees received no salary increases in the 2017 legislative session. Budget projections show the North Dakota economy is not improving, meaning flat or declining general fund balances likely can be expected. This recent history makes it reasonably predictable that at least in the near term we can anticipate static to shrinking appropriations for judicial branch operations. In turn, that means we must adjust, resize and rearrange judicial resources to provide services in line with the level of funding received.

[¶18] Our statewide judicial workload statistics show case filings are flat to declining in 2016, with 159,697 total filings in 2016 verses 185,549 in 2015. *North Dakota Courts Annual Report,* 11 (2016). Before that, our Annual Reports show case filings have been relatively steady from 2011 to 2016: 167,165, 185,982, 183,648, 187,659, 185,549 and 159,697.

[¶19] Our statistics also show the Northeast Judicial District, of which Walsh County is part, has a small long-term excess of judicial resources. In isolation, that excess would not warrant eliminating a judgeship or moving judicial chambers. However, Walsh County cannot be looked at in isolation. *See In re Judicial Vacancy in Dist. Judgeship No. 6,* 2001 ND 199, ¶ 34, 637 N.W.2d 3 (VandeWalle, C.J., concurring) (needs of chambered district must be compared to other needs in other judicial districts). We must acknowledge the long-term changes in both state demographics, as well as the economic and noneconomic costs of having residential chambers in 21 cities across the state. *See* N.D. Sup. Ct. Admin. R. 7.1.

[¶20] The caseload statistics prepared in connection with our review of this vacancy provide the following information about judicial officer surpluses and deficits in the various judicial districts:

| TOTAL JUDICIAL OFFICER OVERAGE/(SHORTAGE) | | | |
|---|---|---|---|
| **District** | **2017-16 WCL Overage/(Shortage)** | **2016-15 WCL Overage/(Shortage)** | **Net Change to Previous Study** |
| **NEJD** | 0.25 | (0.27) | **Decreased Need of 0.52** |
| **NECJD** | (1.50) | (1.17) | Increased need of 0.33 |
| **SEJD** | (0.06) | (0.15) | **Decreased need of 0.09** |
| **ECJD** | (1.82) | (1.28) | Increased need of 0.54 |
| **SCJD** | (3.33) | (3.11) | Increased need of 0.22 |
| **SWJD** | 0.04 | (0.27) | **Decreased need of 0.31** |
| **NWJD** | (0.65) | (1.42) | **Decreased need of 0.77** |
| **NCJD** | (2.06) | (2.25) | **Decreased need of 0.19** |
| **Total** | **(9.13)** | **(9.92)** | **Decreased need of 0.79** |

Our statistics show a statewide shortage of more than 9 judicial officers. Some of the shortages are fractional, but others are short in whole numbers. The judicial districts centered in Bismarck-Mandan, Minot, Fargo and Grand Forks are short 3, 2, 1 and 1 positions respectively. We also know our caseload statistics do not precisely measure group efficiencies, yet observation of judicial operations teaches that having multiple judges in one courthouse allows for more judicial work to be handled per judge as compared to those chambered alone. Moving the judgeship chambered in Walsh County to Grand Forks County would contribute to those known efficiencies.

[¶21] Our caseload statistics show Northeast Central Judicial District comprised of Grand Forks and Nelson Counties has a deficit of 1.5 judicial officers. The caseload statistics show Walsh County has a projected judicial officer needs of .97 in 2017, and had a judicial officer need of .83 in 2016 and .90 in 2015. By now moving the judgeship chambered in Grafton to Grand Forks, by next considering adding

Walsh County to the Northeast Central Judicial District, and by then considering moving one of the Northeast Central Judicial District judgeships to a location with a greater need, would come closer to balancing the statewide need for judicial resources while providing administrative flexibility by having another judge chambered in the Northeast Central Judicial District.

[¶22] Finally, our caseload statistics show that locations of similar size to Walsh County are part of larger judicial districts, usually with chambers in the rural county but with judges actually living and working in Fargo and Bismarck. In the East Central Judicial District, Judgeship No. 7 is chambered at Hillsboro and is served by Judge Webb in Fargo. *See* N.D. Sup. Ct. Admin. R. 7 regarding designation of judgeships and chambers with assignments. In the South Central Judicial District, Judgeship No. 3 is chambered at Washburn and is served by Judge Romanick; Judgeship No. 8 is chambered in Linton and is served by Judge Hill. *Id.* Both

Judge Romanick and Judge Hill live and work in Bismarck-Mandan, with occasional trips to the "chambered" city by them and their colleagues in their district. Mountrail County has nearly twice the annual caseload as Walsh County yet it is served by judges from Minot. *Id.* These statistics and actual operations tell us that my near term and longer term suggested courses of action for Walsh and Grand Forks Counties not only are warranted for the reasons recited above, but also because very similar arrangements exist and are working in locations across North Dakota.

[¶23] Daniel J. Crothers