16 Neb. App. 108
WAYNE REINBRECHT, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, APPELLANT,
v.
WALGREEN Co., DOING BUSINESS AS WALGREENS, APPELLEE.
No. A-05-1317.
Court of Appeals of Nebraska.
Filed November 6, 2007.
Pamela A. Car, of Car & Reinbrecht, P.C., L.L.O., for appellant.
Mark C. Laughlin and Paul M. Shotkoski, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.
SIEVERS, CARLSON, and CASSEL, Judges.
CARLSON, Judge.

INTRODUCTION
Wayne Reinbrecht filed a class action against Walgreen Co., doing business as Walgreens (Walgreens), in the district court for Douglas County. Reinbrecht brought the action on behalf of himself and others similarly situated, alleging violations of Nebraska's Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. § 87-301 et seq. (Reissue 1999 & Cum. Supp. 2006), and Nebraska's Consumer Protection Act (CPA), Neb. Rev. Stat. § 59-1601 et seq. (Reissue 2004), in connection with Walgreens' sale of 37-cent U.S. postage stamps to its customers. The trial court granted summary judgment in favor of Walgreens on both claims and dismissed Reinbrecht's amended complaint. For the reasons stated below, we affirm.

BACKGROUND
Walgreens is a corporation that operates drug stores in Nebraska. Walgreens sells U.S. postage stamps in its stores for the convenience of its customers. It sells the stamps in packages of 4, 10, and 20. Walgreens purchases the stamps from a distributor; the distributor purchases the stamps from the U.S. Postal Service, repackages them, and sells the finished product to Walgreens. Walgreens has no relationship or affiliation with the U.S. Postal Service. Walgreens sells the stamps for a price that is more than the amount a customer would pay for the same stamps at a U.S. Post Office facility.
On January 14, 2005, Reinbrecht went to a Walgreens store located in Omaha, Nebraska, and purchased a pack of 10 self-adhesive 37-cent postage stamps, along with other items. The price of $4.99 and the Walgreens' company logo were printed on the package of stamps Reinbrecht purchased, as well as the description "10 Self-Adhesive Stamps." Reinbrecht paid $4.99 for the package of 10 stamps and received a receipt for his purchase which reflected the $4.99 price for the stamps. The $4.99 price charged by Walgreens for the 10 stamps was $1.29 more than the cumulative face value of the 37-cent stamps.
Reinbrecht claims that on the date he purchased the stamps, the stamp packs were not located in a regular shopping aisle, but, rather, were kept at the checkout counter at a place almost out of reach to customers. He claims that he asked the store clerk for a package of 10 postage stamps and that the clerk "rang it up" and put the stamps in a bag with the other items Reinbrecht purchased. Reinbrecht claims he did not have the opportunity to look at the stamp pack or the amount charged prior to leaving the Walgreens store. He further claims that while in the store, he did not see any prices on either the stamp products or the stamp display.
Walgreens presented evidence to show that its stores follow corporate "planograms," which provide the layout for displaying various products available at Walgreens stores, including postage stamps. For the time period including January 14, 2005, the corporate planogram provided that postage stamps be displayed at the checkout counter in a clear plastic display box with four sections. Each section was labeled with a sticker stating the price and quantity of the corresponding stamp product. The Walgreens store where Reinbrecht purchased the stamps complied with the planogram, including the display of stamp products. However, the actual stamp products were removed from the display box and replaced with "dummy cards." The dummy cards were an accepted Walgreens practice at locations where theft was a concern. The dummy cards advised customers that the stamp products were available at the front register. The dummy cards located in the individual sections of the display box identified the price and quantity of the stamp products. When stamps are purchased, the cash register display shows the price of each stamp package as it is scanned by the clerk, and a receipt is given to the customer showing the price of each stamp package.
On the date Reinbrecht purchased the stamps in question, there were signs in the Walgreens store at issue that stated, "US Postage Stamps Available Here." The signs were displayed on the front door of the Walgreens store, in the "Hallmark" aisle, and near the front register. The signs did not indicate that the stamps were sold at a higher price than their face value.
On March 14, 2005, Reinbrecht filed an amended complaint on behalf of himself and all others similarly situated against Walgreens, alleging that it had violated the UDTPA and the CPA in connection with its practice of selling postage stamps at a higher price than the face value of the 37-cent stamps. Specifically, Reinbrecht alleged that Walgreens' practice causes confusion and is deceiving, because the stamps it sells are identical in appearance to those sold by the U.S. Postal Service, the packaging is substantially similar to the U.S. Postal Service packaging, and Walgreens provides no notice to its customers of the increased charge. Reinbrecht alleged that this was a class action and sought certification of a class.
On April 11, 2005, Walgreens filed a motion to dismiss Reinbrecht's amended complaint. The motion to dismiss was converted to a motion for summary judgment after Reinbrecht submitted an affidavit in opposition to the motion to dismiss and it was received by the court. Both parties were given a reasonable opportunity to present additional material in regard to the motion for summary judgment. Following a hearing on Walgreens' motion for summary judgment, the trial court granted the motion as to both the UDTPA and CPA claims.
This case has not been certified as a class action. By agreement of the parties, Reinbrecht's motion for class certification was continued pending the outcome of the summary judgment motion.

ASSIGNMENTS OF ERROR
In regard to the UDTPA claim, Reinbrecht assigns that the trial court erred in (1) finding that he may not recover damages under the UDTPA, (2) finding that he must show that he is likely to be damaged by Walgreens' deceptive acts in the future, (3) finding that Walgreens' practices did not cause a "'likelihood of confusion," (4) finding that Walgreens' practices were not deceptive as a matter of law, (5) finding that Walgreens does not fall under the scope of the U.S. Postal Service regulations, and (6) granting Walgreens' motion for summary judgment.
In regard to the CPA claim, Reinbrecht assigns that the trial court erred in (1) finding that he must prove that Walgreens' actions are both "'unfair" and "'deceptive," (2) using the wrong definitions of "'unfair" and "`deceptive," and (3) granting Walgreens' motion for summary judgment.

STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Alston v. Hormel Foods Corp., 273 Neb. 422, 730 N.W.2d 376 (2007); City of Lincoln v. Hershberger, 272 Neb. 839, 725 N.W.2d 787 (2007). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

UDTPA.
We first address Reinbrecht's assignments of error that relate to his UDTPA claim. Section 87-302 of the UDTPA provides in pertinent part:
(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:
(1) Passes off goods or services as those of another;
(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;
(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.
The UDTPA also provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. . . ." § 87-303(a).
Reinbrecht first assigns that the trial court erred in finding that he may not recover damages under the UDTPA. The trial court found that the UDTPA provides only for equitable relief and that therefore, Reinbrecht cannot recover monetary damages under the UDTPA, but, rather, only injunctive relief.
[3,4] By its own terms, § 87-303(a) provides only for equitable relief consistent with general principles of equity. Sid Dillon Chevrolet v. Sullivan, 251 Neb. 722, 559 N.W.2d 740 (1997). The UDTPA, specifically § 87-303, does not provide a private right of action for damages. Triple 7, Inc. v. Internet, Inc., 338 F. Supp. 2d 1082 (D. Neb. 2004). In Triple 7, Inc., the court dismissed the plaintiff's UDTPA claim because the plaintiff did not seek injunctive relief. Accordingly, the trial court in the instant case did not err in finding that Reinbrecht may not recover damages under the UDTPA. Reinbrecht's assignment of error in this regard is without merit.
Reinbrecht next assigns the trial court erred in finding that he must show he is likely to be damaged by Walgreens' deceptive acts in the future and that he failed to do so. The trial court found that summary judgment was appropriate on Reinbrecht's UDTPA claim, because he had not alleged or proved the likelihood of future harm sufficient to assert a viable claim for injunctive relief. We agree.
As previously stated, the UDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another" can seek an injunction prohibiting such practices. § 87-303(a). Because the UDTPA provides injunctive relief for "a person likely to be damaged," it provides relief from future damage, not past damage. Reinbrecht must present evidence sufficient to support an inference of future harm to him. Reinbrecht now knows the truth regarding the price of the postage stamps sold by Walgreens. Therefore, any deception or damage to Reinbrecht occurred in the past and Reinbrecht cannot suffer future damages as a result of Walgreens' alleged deceptive practices in regard to its sale of postage stamps. Reinbrecht has not presented any evidence or even alleged that he is "likely to be damaged" by Walgreens' practice in the future. Thus, the evidence does not indicate a likelihood of future harm.
Damage allegedly caused by Reinbrecht's purchase of postage stamps in January 2005 cannot be remedied through an injunction. To survive summary judgment, Reinbrecht had to raise a factual question about the likelihood of some future wrong to him. Because he failed to do so, the trial court properly granted Walgreens' motion for summary judgment on the UDTPA claim.
[5] Having determined that the trial court properly granted summary judgment on the ground that Reinbrecht did not show the likelihood of some future wrong to him, we need not address Reinbrecht's other assignments of error that relate to the UDTPA claim. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. Castillo v. Young, 272 Neb. 240, 720 N.W.2d 40 (2006); Davis v. Crete Carrier Corp., 15 Neb. App. 241, 725 N.W.2d 562 (2006).

CPA.
In regard to Reinbrecht's CPA claim, he first assigns that the trial court erred in finding that he must prove that Walgreens' actions are both "unfair" and "deceptive." Section 59-1602 of the CPA provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."
Reinbrecht's argument is based on a portion of the trial court's order which states that under the CPA, "a Plaintiff must also prove that a practice is 'deceptive." (Emphasis supplied.) The quoted language is followed by a definition of "deceptive" and is preceded by a definition of "unfair." The quoted language on its own implies that the court mistakenly found that Reinbrecht must prove that Walgreens' actions are both unfair and deceptive. However, when the court's order is read in its entirety, it is clear that the trial court did not apply such a requirement. The trial court quoted the language in § 59-1602, as set forth above, in its order. It further stated that the principal thrust of the CPA "is to prevent unfair or deceptive acts or practices in trade or commerce." Further, the trial court specifically held that "the manner in which Walgreens sold U.S. postage stamps to [Reinbrecht] is not unfair or deceptive." It is clear that the trial court knew the CPA requires a plaintiff to prove an act is either unfair or deceptive, and not both, and that the trial court applied the proper test in analyzing Reinbrecht's claim under the CPA. Thus, Reinbrecht's assignment that the trial court erred in finding that Reinbrecht must prove that Walgreens' actions are both unfair and deceptive is without merit.
Reinbrecht next assigns that the trial court erred by using the wrong definitions of "unfair" and "deceptive" in analyzing his CPA claim. The trial court relied on definitions found in Raad v. Wal-Mart Stores, Inc., 13 F. Supp. 2d 1003 (D. Neb. 1998). After noting that the terms "unfair" and "deceptive" are not defined in the CPA and that no Nebraska case law defines the terms as used in the CPA, the Raad court stated that an unfair trade practice is one that is immoral, unethical, oppressive, or unscrupulous. It defined a deceptive practice as one which possesses the tendency or capacity to mislead, or creates the likelihood of deception, and that fraud, misrepresentation, and similar conduct are examples of what is prohibited.
Reinbrecht contends that the trial court should not have relied on the definitions in Raad v. Wal-Mart Stores, Inc., supra, because that case, unlike the present case, was a dispute between two merchants. Reinbrecht contends that the Raad court indicated that the definitions of "unfair" and "deceptive" may be more expansive when the dispute is between a retail consumer and a merchant. Thus, Reinbrecht argues that by relying on the definitions set forth in Raad, the trial court failed to apply the appropriate definitions of these terms.
Although Reinbrecht claims that the trial court used the wrong definitions of "unfair" and "deceptive," he fails to cite any authority suggesting alternate definitions; nor does he offer any alternative definitions whatsoever. We cannot conclude that the definitions of "unfair" and "deceptive" used by the court were faulty or that there were more appropriate definitions that it could have applied. We find no merit to Reinbrecht's assignment of error in regard to the court's definitions of "unfair" and "deceptive."
Finally, Reinbrecht assigns that the trial court erred in granting Walgreens' motion for summary judgment in regard to the CPA claim. The trial court found that Walgreens' method of selling postage stamps to Reinbrecht was not unfair or deceptive.
The evidence is uncontroverted that Walgreens advised its customers that U.S. postage stamps were available for sale and that it sold authentic U.S. postage stamps. The price was shown on the packages, the price stickers on the stamp display, the cash register display, and the receipt given to the customer. Thus, Walgreens provided information about the price before and at the time of sale such that any customer could discern the amount of the markup.
Reinbrecht claims that while in the Walgreens store, he did not see any prices on the stamp products or stamp display. However, the package of stamps Reinbrecht purchased clearly stated a price of $4.99 and stated that it contained 10 stamps. Further, Reinbrecht does not contest that the cash register display showed the price for the stamps when the clerk scanned the package. In addition, the receipt given to Reinbrecht stated a price of $4.99.
Viewing all the evidence in a light most favorable to Reinbrecht, there is no genuine issue of material fact regarding how Walgreens sold U.S. postage stamps. Based on the uncontroverted evidence, we agree with the trial court that Walgreens' method and manner of selling U.S. postage stamps on January 14, 2005, was neither unfair nor deceptive. Walgreens was entitled to judgment as a matter of law on Reinbrecht's CPA claim. Reinbrecht's final assignment of error is without merit.

CONCLUSION
We conclude that the trial court did not err in granting summary judgment in favor of Walgreens on Reinbrecht's UDTPA and CPA claims and in dismissing his amended complaint with prejudice. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.