IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOMEBUYERS INC. V. WATKINS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

HOMEBUYERS INCORPORATED, A NEBRASKA CORPORATION, APPELLEE,

V.

BRUCE A. WATKINS AND PATSEY WATKINS, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
APPELLANTS, AND WELLS FARGO HOME MORTGAGE AND WELLS FARGO
BANK, N.A., THIRD-PARY DEFENDANTS, APPELLEES.

Filed June 4, 2019.    No. A-18-258.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellants.

Nancy L. Loftis for appellee Homebuyers Incorporated.

Jennifer L. Andrews and Dwyer Arce, of Kutak Rock, L.L.P., for appellee Wells Fargo
Bank, N.A.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Bruce A. Watkins and his wife, Patsey Watkins, purchased a home in Lincoln financed by
a promissory note with Wells Fargo Home Mortgage, which note was secured by a deed of trust.
Because the Watkinses failed to make payment on the note, the trustee foreclosed on the property.
It was subsequently conveyed to Homebuyers Incorporated (Homebuyers). Homebuyers initiated
a forcible entry and detainer action against the Watkinses, and the Watkinses filed a third-party
complaint against Wells Fargo Bank, N.A. (Wells Fargo). Homebuyers moved for summary
judgment on their complaint, which the court granted. Wells Fargo moved to dismiss the

- 1 -

Watkinses' claims against it for failing to state a claim for which relief could be granted, which the court also granted. The Watkinses appeal, and we affirm.

## II. BACKGROUND

On April 27, 2005, the Watkinses were conveyed a home in Lincoln secured by a deed of trust for which Wells Fargo was the beneficiary. In the deed, the Watkinses acknowledged that they owed a debt to Wells Fargo under a separate note. The deed granted the trustee the power of sale in the event the Watkinses failed to make the monthly payments described in the note. The Watkinses failed to make the payments on the note in 2015, and Wells Fargo corresponded with them in letters, dated September 8, 2015, September 9, 2016, and February 11, 2017. These letters noted that their payments were past due and informed them that they may qualify for a loan modification.

Because of the Watkinses' failure to make payments on the note, the trustee executed her power of sale at a foreclosure sale on April 13, 2016. At the foreclosure sale, REO Asset Management Company (REO) purchased the property by trustee's deed, which was executed on April 18 and recorded with the Lancaster County Register of Deeds on April 22. REO conveyed the property to Homebuyers by an April 18 corporate warranty deed, which was recorded with the Lancaster County Register of Deeds on April 25.

On April 14, 2016, Homebuyers posted a written notice on the property, directing the Watkinses to vacate within 3 days. The Watkinses did not vacate the property, so Homebuyers filed a forcible entry and detainer action against the Watkinses in Lancaster County Court. The case was subsequently certified to the district court for Lancaster County. The Watkinses filed an answer denying the allegations in Homebuyers' complaint.

The Watkinses filed a third-party complaint against Wells Fargo. The complaint alleged causes of action for wrongful foreclosure, violations of the "Home Affordability Modification Program," breach of contract, and violations of Nebraska's consumer protection statutes. The complaint also alleged that the Watkinses' adjustable interest rate was against public policy as evidenced by federal law. The district court dismissed this complaint without prejudice. The Watkinses thereafter filed a second amended third-party complaint; however, this pleading was not included in our record. Wells Fargo filed a motion to dismiss the second amended third-party complaint, although this motion also was not included in our record.

Homebuyers filed a motion for summary judgment on April 27, 2017. In response, the Watkinses filed a motion asking the district court to dismiss Homebuyers' complaint for lack of subject matter jurisdiction due to their title dispute with Wells Fargo. The district court held a hearing on Homebuyers' motion for summary judgment on June 19. The court received the affidavit of Todd Green, the chief operating officer of Homebuyers; the trustee's deed, which granted title of the property to REO; the corporate warranty deed, which granted title of the property to Homebuyers; and two copies of the motion to vacate that Homebuyers posted on the property. The Watkinses offered no evidence at this hearing.

On August 30, 2017, the district court entered an order, granting Wells Fargo's motion to dismiss the Watkinses' second amended third-party complaint. The court found that the Watkinses failed to state a claim for which relief could be granted as to each cause of action. The district court

dismissed with prejudice the Watkinses attempts to allege causes of action for wrongful foreclosure, quiet title, breach of contract, breach of implied covenant of good faith and fair dealing, violations of Nebraska's consumer protection statutes, and unjust enrichment through ignoring the homestead exemption. The court noted that because it had dismissed these allegations in previous iterations of the Watkinses' third-party complaint, justice did not require the court grant them leave to amend their complaint. However, the court dismissed without prejudice their claims for promissory estoppel, violations of Regulation X, misrepresentation, negligent servicing, and unjust enrichment due to Wells Fargo ignoring their rights as occupants and claimants.

The same day, the district court entered an order granting Homebuyers' motion for summary judgment. The court found that the trustee's deed and corporate warranty deed demonstrated that the property was conveyed to Homebuyers. The court noted that the Watkinses did not argue that they had a superior right to immediate possession, but rather they challenged the validity of the trustee's deed. The court referred to its determination regarding the validity of the trustee's deed in its order on Wells Fargo's motion to dismiss the Watkinses' second amended third-party complaint. The court also found that the validity of the deed was irrelevant to the issue of immediate right of possession.

The Watkinses filed a third amended third-party complaint on October 6, 2017. In addition to their factual allegations, they alleged 11 causes of action: (1) wrongful foreclosure, (2) quiet title, (3) breach of contract, (4) breach of implied covenant of good faith and fair dealing, (5) promissory estoppel (6) violations of Nebraska's consumer protection statutes, (7) violations of Regulation X, (8) misrepresentation, (9) negligent servicing, (10) "Unjust Enrichment (Assumpsit) -- Homestead," and (11) "Unjust Enrichment (Assumpsit) -- Occupants and Claimants." They attached to their third amended third-party complaint their deed of trust and the letters addressed to them from Wells Fargo dated September 8, 2016, September 9, 2016, and February 11, 2017. We discuss the allegations in this complaint further as necessary in our analysis below. Wells Fargo moved to dismiss this complaint, although the motion is not in the record.

On January 2, 2018, the district court entered an order granting Wells Fargo's motion to dismiss the Watkinses' third amended third-party complaint. The court observed that it had previously dismissed with prejudice six of the Watkinses' claims. Noting that the additional allegations in the Watkinses' third amended third-party complaint "do not cure the deficiencies of the Second Amended Complaint as identified by this Court in its August 30, 2017 Order," the court dismissed those allegations without discussion. The court thoroughly analyzed the Watkinses' remaining allegations and causes of actions, finding that, as to each, the Watkinses failed to state a claim for which relief can be granted.

The Watkinses appeal.

## III. ASSIGNMENTS OF ERROR

The Watkinses assign, restated, that the district court erred in (1) granting summary judgment to Homebuyers and (2) dismissing their third amended third-party complaint for failing to state a claim upon which relief could be granted.

The Watkinses also assigned that the district court erred "in determining that [their] allegations and preliminary showing, with regard to the title to their home, or the validity of the

trustee's deed was irrelevant to summary judgment." The Watkinses made no argument in support of this assignment. Errors must be both assigned and argued to be addressed by an appellate court. *Applied Underwriters v. E.M. Pizza*, 26 Neb. App. 906, 623 N.W.2d 789 (2019). Thus, we decline to discuss this assigned error, except as it relates to the Watkinses' assignment concerning the district court's summary judgment award.

## IV. STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine dispute as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See *Larsen v. 401 Main Street*, 302 Neb. 454, 923 N.W.2d 710 (2019). In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Chase County v. City of Imperial*, 302 Neb. 395, 923 N.W.2d 428 (2019).

A district court's grant of a motion to dismiss is reviewed de novo. *Marie v. State*, 302 Neb. 217, 922 N.W.2d 733 (2019). When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions. *Id.* To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018).

## V. ANALYSIS

### 1. HOMEBUYERS' SUMMARY JUDGMENT

The Watkinses assign that the district court erred in granting Homebuyers' motion for summary judgment. They argue that the record contained factual disputes about the validity and effectiveness of the trustee's sale and resulting trustee's deed. We disagree.

A party moving for summary judgment has the burden to show that no genuine dispute of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. See *Apkan v. Life Care Centers of America*, 26 Neb. App. 154, 918 N.W.2d 601 (2018). After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing a dispute of material fact that prevents judgment for the moving party. See *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017).

A forcible entry and detainer action is a special statutory proceeding designed to provide a speedy and summary method by which the owner of real estate might regain possession of it from one who had unlawfully and forcibly entered into and detained possession thereof, or one who, having lawfully entered, then unlawfully and forcibly detained possession. See *Federal Nat.*

*Mortgage Assn. v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014). Because of its summary nature, the Legislature, under Neb. Rev. Stat. § 25-21,219 (Reissue 2016), has narrowed the issues that can be tried in a forcible entry and detainer action to the right of possession and statutorily designated incidents thereto. *Federal Nat. Mortgage Assn., supra.*

A forcible entry and detainer action does not try the question of title, but only the immediate right of possession. *Id.* If the resolution of a forcible entry and detainer action requires a court to determine a title dispute, the court must dismiss the case for lack of jurisdiction. *Id.* When a forcible entry and detainer action is ongoing, the mere averment that title is in dispute in another action involving the same property does not automatically divest the court hearing the forcible entry and detainer action of jurisdiction. Instead, the court may proceed until the evidence discloses that the question involved is one of title. *Id.*

After reviewing the pleadings and the evidence in a light most favorable to the Watkinses, we find that the record contains no genuine dispute of material fact as to Homebuyers' ownership and superior possessory interests in the property. At the April 13, 2016, foreclosure sale, the trustee conveyed the property to REO. The trustee's deed was executed on April 18, and recorded with the Lancaster County Register of Deeds on April 22. REO, in turn, conveyed the property to Homebuyers by a corporate warranty deed dated April 18, which deed was recorded with the Lancaster County Register of Deeds on April 25.

Neb. Rev. Stat. § 76-1010 (Reissue 2018) provides:

(2) The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the trustor and his or her successors in interest and of all persons claiming by, through, or under them, in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the trustor or his or her successors in interest subsequent to the execution of the trust deed. All right, title, interest, and claim of the trustor and his or her successors in interest, and of all persons claiming by, through, or under them, in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the trustor or his or her successors in interest subsequent to the execution of the trust deed, shall be deemed to be terminated as of the time the trustee or the attorney for the trustee accepts the highest bid at the time of the sale.

The trustee's deed and the corporate warranty deed clearly demonstrate that the property was conveyed to Homebuyers, and the Watkinses have presented no contrary evidence. The Watkinses filed no counterclaim against Homebuyers to quiet title to the property, and the district court found their second amended third-party complaint failed to allege causes of action against Wells Fargo that might cloud the title to the property. As we discuss further below, their third amended third-party complaint against Wells Fargo similarly fails to assert causes of action that might cloud the title. Therefore, we find the district court properly granted Homebuyers' motion for summary judgment.

## 2. DISMISSAL OF THIRD AMENDED THIRD-PARTY
COMPLAINT AGAINST WELLS FARGO

The Watkinses assign that the district court erred in dismissing the allegations in their third amended third-party complaint against Wells Fargo. As discussed below, we find that the district court properly dismissed that complaint under Neb. Ct. R. Pldg. § 6-1112(b)(6) (Rule 12 (b)(6)) for failing to state a claim upon which relief could be granted.

### (a) Watkinses' Brief Contains Sufficient Argument

As a preliminary matter, we address Wells Fargo's argument that because the Watkinses' brief insufficiently argues their assigned errors, we should not address those errors. As we noted above, errors must be both assigned and argued to be addressed by an appellate court. *Applied Underwriters v. E.M. Pizza*, 26 Neb. App. 906, 623 N.W.2d 789 (2019). Appellants are required to point out the factual and legal bases that support their assignments of error. *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

Wells Fargo asserts that the Watkinses' brief merely restates the allegations in their third amended third-party complaint without providing any substantive argument. While the Watkinses' brief contains little argument, it does contain some. In general, the Watkinses argue that the district court's decision to dismiss their third amended third-party complaint under Rule 12(b)(6) failed to consider that complaint's allegations. In their brief, the Watkinses list the allegations that they feel address the deficiencies the court recited in its orders. Their argument is sufficiently specific and points to facts in the record. Thus, we address it below.

### (b) Causes of Action Dismissed With Prejudice
### in August 30, 2017, Order

We first address the causes of action in the Watkinses' third amended third-party complaint which were apparently also raised in their second amended third-party complaint which the district court dismissed with prejudice in its August 30, 2017, order. These include (i) wrongful foreclosure, (ii) quiet title, (iii) breach of contract, (iv) breach of implied covenant of good faith and fair dealing, (v) violations of Nebraska's consumer protection statutes, (vi) and unjust enrichment for failing to account for the homestead exemption.

In dismissing these causes of action in its order on the Watkinses' third amended third-party complaint, the district court reasoned that the Watkinses' restatement of these claims in their third amended third-party complaint did not cure the deficiencies of the second amended third-party complaint. The Watkinses did not include the second amended third-party complaint in our appellate record. As a result, we are unable to review how the claims were previously stated, and are therefore unable to consider whether deficiencies were cured. It is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

However, as discussed below, even as these causes of action are stated in their third amended third-party complaint, they fail to state a claim upon which relief can be granted.

*(i) Wrongful Foreclosure*

In their third amended third-party complaint, the Watkinses allege that the loan was wrongfully foreclosed. Specifically, they allege that defects in the trustee's sale rendered that sale void or voidable. We find the Watkinses have not alleged facts that would render the sale void or voidable, and thus their third amended third-party complaint failed to state a claim upon which relief could be granted.

The Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2018), authorizes a trust deed to be used as a security device and provides that real property can be conveyed by trust deed to a trustee as a means to secure the performance of an obligation. *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013). See, also, § 76-1002(1). The Trust Deeds Act allows a trust deed to expressly confer upon a trustee the power of sale. See § 76-1005. Pursuant to the power of sale, a trustee can sell the property conveyed by a trust deed without any court's authorization or direction, though the trustee must comply with procedural requirements contained in the Trust Deeds Act. *First Nat. Bank of Omaha, supra*.

Although the Trust Deeds Act does not provide a remedy for a defective trustee's sale, the trustor can sue in equity to set the sale aside. *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003). See, also, *Klein v. Oakland/Red Oak Holdings*, 294 Neb. 535, 883 N.W.2d 699 (2016). Defects in a trustee's sale conducted under a power of sale in a trust deed fall into one of three categories: (1) those that render the sale void, (2) those that render the sale voidable, and (3) those that are inconsequential. *Gilroy, supra*.

When a trustee's sale is void, no title, legal or equitable, passes to the sale purchaser or subsequent grantees. *Id.* In other words, adversely affected parties may have the sale set aside even though the property has passed into the hands of a bona fide purchaser. *Id.* Defects that render a trustee's sale void are rare and generally occur when the trustee conducted the sale, but no right to exercise the power of sale existed. *Id.* Typical examples include situations when (1) no default on the underlying obligation has occurred, (2) the trust deed is a forgery, and (3) the trust deed requires the beneficiary to request that the trustee commence foreclosure proceedings and no request has been made. *Id.* Further, even if there is a right to exercise the power of sale, an egregious failure to comply with fundamental procedural requirements while exercising the power of sale will render the sale void. *Id.*

The second category of defects consists of those that render the sale voidable. *Id.* When a defect renders a sale voidable, bare legal title passes to the sale purchaser. An injured party can have the sale set aside only so long as legal title has not moved to a bona fide purchaser. *Id.* To establish a defect that renders the trustee's sale voidable, the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice. *Id.* The final category consists of those defects that are so inconsequential as to render the sale neither void nor voidable, and as a result, equity will not set aside the sale. See *id.* Generally, a court will not view a defect as inconsequential if the party seeking to set aside the sale shows that prejudice was suffered because of the defect. See *id.*

The Watkinses have alleged no facts that would render the trustee's sale of the property void or voidable. The Watkinses admitted that they "had fallen behind" on their loan payments,

and the trustee made a notice of default on January 28, 2016. They did not allege that the underlying agreement was a forgery. Thus, their third amended third-party complaint does not show the sale to be void.

The Watkinses allege that the trustee's sale of their house is void or voidable because they received "defective" notice. They allege that notice of default was mailed with a return receipt rather than by certified mail. Because their allegations state that they did, in fact, receive notice of default, they have not alleged the failure to send the notice by certified mail prejudiced them. Instead, they alleged an inconsequential defect in the sale, and equity will not set aside a foreclosure for an inconsequential error. *Id.*

The Watkinses also allege that they never received an "unequivocal" sale notice before the sale of the property. They allege, however, that the trustee's deed "makes certain recitations regarding the grantor's compliances with the notice provisions of both the Nebraska statutes, and the terms of the underlying deed of trust." The trustee's deed states the time and place of the sale as well as the fact that notice of the sale was published once a week for 5 consecutive weeks as required under Neb. Rev. Stat. §§ 76-1007 and 76-1008 (Reissue 2018). The Trust Deeds Act does not require actual receipt of notice:

> The trustee's deed may contain recitals of compliance with the requirements of the Nebraska Trust Deeds Act relating to the exercise of the power of sale and sale of the property described therein, including recitals concerning any mailing, personal delivery, and publication of the notice of default, any mailing and the publication and posting of notice of sale, and the conduct of sale. Such recitals shall constitute prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

§ 76-1010. Because the deed contained recitals of compliance with the Trust Deeds Act, it provided prima facie evidence of compliance with that act, including its notice requirements.

The Watkinses argue that the trustee's sale is void because it violated their modified loan agreement with Wells Fargo. The Watkinses allege that Wells Fargo made a "tacit, but enforceable, modification to their loan agreement" by sending them letters, which they attached to their complaint. They assert these letters were a loan modification that was "in writing, and subscribed by the party to be charged therewith" in compliance with the statute of frauds, Neb. Rev. Stat. § 36-202 (Reissue 2016). Generally, the letters stated that the Watkinses were past due on their payments and provided them with options for payment help and counseling. They did not contain terms and conditions of a modified loan. The Watkinses allege that the assistance offered in these letters made them fail to "appreciate the serious and precarious position their Loan was in" and that the foreclosure violated the terms of the "modified agreement" contained within the letters.

The Watkinses also allege that a host of federal statutes modified their loan agreement. They do not, however, explain specifically how those statutes modified their loan agreement. The Watkinses neither allege nor show any facts demonstrating that they applied for a loan modification, and the letters attached to the pleadings do not evidence a modified agreement between the parties.

The Watkinses have not shown any defects in the house's sale that would render that sale void or voidable. Thus, this cause of action in their third amended third-party complaint does not state a claim upon which relief can be granted.

### (ii) Quiet Title

The Watkinses' next cause of action in their third amended third-party complaint seeks to quiet title to the property under Neb. Rev. Stat. § 25-21,112 (Reissue 2016), which provides:

> An action may be brought and prosecuted to final decree, judgment or order, by any person or persons, whether in actual possession or not, claiming title to, or an estate in real estate against any person or persons who claim, or apparently have an adverse estate or interest therein, for the purpose of determining such estate, or interest, canceling unenforceable liens, or claims against, or which appear to be against said real estate, and quieting the title to real estate.

This cause of action too fails as a matter of law.

The Watkinses do not allege that Wells Fargo claims any title or interest in the property. Instead, they allege that the property was "scheduled for a trustee's sale and the sale was successfully conducted." The trustee was permitted to sell the property under the deed of trust because the Watkinses failed to make payments under their loan. Under these allegations, the trustee sold whatever interest Wells Fargo had in the property to Homebuyers at the trustee's sale, and at that point, Homebuyers--not Wells Fargo--had an adverse interest in the property. Because the Watkinses did not allege that Wells Fargo had an interest in the property adverse to their interest in the property, the district court properly dismissed their alleged quiet title action against Wells Fargo.

### (iii) Breach of Contract Claims

The Watkinses allege in their third amended third-party complaint that Wells Fargo breached its contract with them by violating the "spirit of the laws passed by Congress and enumerated [in] the 'Home Affordable Modification Program'" as well as the "anti-'dual-tracking' provisions of Regulation X under the provisions of the [Real Estate Settlement Procedure Act]." They allege that these laws amounted to a "modification" to their loan agreement. We disagree.

Beyond their generalized allegations that Wells Fargo violated the "spirit" of the above acts, the Watkinses have not alleged facts that show they and Wells Fargo modified their loan agreement. A modification of an existing contract that substantially changes the liability of the parties requires mutual assent. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). The Watkinses do not allege the existence of a document detailing the terms of a modified loan, and they do not allege that they and Wells Fargo signed a modification document. Instead, they allege that the letters Wells Fargo sent explaining their payment options were a "tacit, but enforceable" loan modification agreement that complied with the statute of frauds' requirements that agreements be "'in writing, and subscribed by the party to be charged therewith.'" We disagree that these letters amount to an enforceable agreement. These letters, which were attached to the pleadings and thus incorporated therein, are not "subscribed" by either

party. Further, the letters do not show the terms of the modified loan agreement that they allege Wells Fargo breached.

The Watkinses also did not allege that they met their obligations under their deed of trust. Instead, they admitted that they fell behind on their payment obligations. To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract. *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016). Thus, the Watkinses are not entitled to maintain a breach of contract action against Wells Fargo.

### (iv) Breach of Terms Implied in Law

The Watkinses next allege in their third amended third-party complaint that Wells Fargo breached the terms implied in the contract in law, namely the covenant of good faith and fair dealing. After a de novo review of the pleadings, we find that the Watkinses failed to state a claim for relief upon which relief can be granted.

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *In re Application of Northeast Neb. Pub. Power Dist.*, 300 Neb. 237, 912 N.W.2d 884 (2018). The nature and extent of an implied covenant of good faith and fair dealing are measured in a particular contract by the justifiable expectations of the parties. *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014). Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. *Id.* The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. *Id.*

The Watkinses' third amended third-party complaint does not allege that the terms of their deed of trust required Wells Fargo to modify that deed of trust upon their default. Because an implied covenant does not create rights or duties not otherwise provided for in the existing contractual relationship, the Watkinses' allegations that Wells Fargo was somehow implicitly obligated to modify the deed of trust are insufficient as a matter of law. As a result, this claim also fails.

### (v) Violations of Nebraska Consumer Protection Statutes

The Watkinses also allege violations of the Nebraska Deceptive Trade Practices Act (NDTPA), Neb. Rev. Stat. § 87-301 *et seq.* (Reissue 2014 & Supp. 2018) and the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1601 *et seq.* (Reissue 2010 & Supp. 2018). Specifically, they allege that Wells Fargo failed to "follow through" on the promises and offers that it made to the Watkinses in the "lending documentation," which apparently refers to the letters Wells Fargo sent to them after they defaulted on their loan. They allege that those letters were "phrased in such a manner as to mislead persons such as [the Watkinses] as to the real availability of options for foreclosure avoidance and loss of their Property." As discussed below, their allegations fail to state a claim under either act.

### a. Nebraska Deceptive Trade Practices Act

The Watkinses allege that Wells Fargo violated § 87-302 (9), (10), and (16) of the NDTPA, which provide as follows:

(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:

. . . .

(9) Disparages the goods, services, or business of another by false or misleading representation of fact;

(10) Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person;

. . . .

(16) Uses any scheme or device to defraud by means of:

(i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or

(ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme.

The Watkinses have not alleged sufficient facts to show that Wells Fargo's letters violated the cited provisions of the NDPTA. As the district court noted in its August 30, 2017, order, the letters at issue merely informed the Watkinses that their mortgage payments were past due and that they may be eligible for a loan modification. Absent factual allegations, the Watkinses conclusory allegations are insufficient to suggest a plausible claim.

The Watkinses allegations also fail to state a claim for which relief under the NDTPA because they do not present an injury that an injunction could remedy. The NDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another" can seek an injunction prohibiting such practices. § 87-303(a). Because the NDTPA provides injunctive relief for "'a person likely to be damaged,'" it provides relief from future damage, not past damage. *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 113, 742 N.W.2d 243, 248 (2007). The NDTPA does not provide a private right of action for damages. See *Reinbrecht, supra.* Because the trustee sold the property here to Homebuyers on April 13, 2016, and the trustee's deed was properly recorded with the Register of Deeds for Lancaster County, the damage the Watkinses allege cannot be remedied through an injunction. The Watkinses have further failed to make allegations that demonstrate a likelihood of further harm, and thus they are not entitled to injunctive relief.

### b. Nebraska Consumer Protection Act

The Watkinses also allege that Wells Fargo violated § 59-1602, which provides, in relevant part, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." This section does not apply, however, to "actions or transactions otherwise permitted, prohibited, or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of this state or the United States." § 59-1617(1).

In their third amended third-party complaint, the Watkinses allege that under the Nebraska Supreme Court's holding in *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995), their loan with Wells Fargo is not exempt from the NCPA. In their brief, they argue that under *Wrede*, § 59-1617 does not apply where the "specific action or inaction is not itself regulated, but left to the entity's choice." Brief for appellant at 27.

The plaintiff in *Wrede* appealed the trial court's determination that both the defendant bank and the plaintiff's loan with that bank were exempted from the NCPA. Citing *Kuntzelman v. Avco Financial Services of Nebraska, Inc.*, 206 Neb. 130, 291 N.W.2d 705 (1980), the court stated "while particular conduct is not immunized from the operation of the [NCPA] merely because the actor comes within the jurisdiction of some regulatory body, immunity does arise if the conduct itself is also regulated." *Wrede*, 247 Neb. at 915, 531 N.W.2d at 529. Because both the bank and the loan transaction at issue were heavily regulated by the state, the court concluded the trial court's exemption determination under the NCPA was correct. *Wrede, supra.*

The Supreme Court's decision in *Wrede* supports the district court's determination that the Watkinses' loan with Wells Fargo is exempt from the NCPA. The Watkinses repeatedly allege that their loan was subject to federal regulation. They also allege that Wells Fargo is a "national bank." As such, it is regulated by the Comptroller of the Currency, which has governing authority over the Watkinses' loan. 12 U.S.C. 93a (2012). Because both Wells Fargo and the loan are federally regulated, the loan transaction is exempt from the NCPA.

We also note that the Watkinses failed to allege that any purported unfair or deceptive practices prohibited under the NCPA affected the public interest. The NCPA only applies to unfair or deceptive practices which affect the public interest. *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008). The act is not available to redress a private wrong where the public interest is unaffected. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000). Because the Watkinses failed to allege that Wells Fargo's actions with respect to their loan affected the public interest, they have failed to state a cause of action under the NCPA.

### (vi) Unjust Enrichment--Homestead Exemption

The last of the Watkinses' causes of action that the district court dismissed with prejudice in its order on their second amended third-party complaint was an unjust enrichment claim. Unjust enrichment occurs when there has been a transfer of a benefit without adequate legal ground. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015). The Watkinses allege that Wells Fargo was unjustly enriched when it disregarded their homestead rights, as expressed in Neb. Rev. Stat. § 40-101 and § 40-105 (Reissue 2016).

Section 40-101 provides, in relevant part:

> A homestead not exceeding sixty thousand dollars in value shall consist of the dwelling house in which the claimant resides, its appurtenances, and the land on which the same is situated . . . shall be exempt from judgment liens and from execution or forced sale.

This exemption is inoperative as against "debts secured by mortgages or trust deeds upon the premises executed and acknowledged by both husband and wife, or an unmarried claimant." Neb. Rev. Stat. § 40-103 (Reissue 2016).

Here, the Watkinses, as husband and wife, executed the deed of trust for the benefit of Wells Fargo. Their debt to Wells Fargo secured by the trust deed is not subject to the homestead exemption, and the Watkinses are not entitled to the exemption. As a result, they have not alleged facts showing that Wells Fargo has been unjustly enriched because it ignored their homestead rights.

### (c) Causes of Action Dismissed With Prejudice
### in January 2, 2018, Order

We next analyze the claims the district court dismissed with prejudice in its January 2, 2018 order on the Watkinses' third amended third-party complaint. These include alleged causes of action for (i) promissory estoppel, (ii) violations of Regulation X, (iii) misrepresentation, (iv) negligent servicing, and (v) unjust enrichment--occupants and claimants. As discussed below, after a de novo review, we find that the Watkinses failed to state a claim for which relief can be granted as to each of these causes of action.

### *(i) Promissory Estoppel*

The Watkinses attempt to allege a claim for recovery under the theory of promissory estoppel. Promissory estoppel is based on a party's detrimental reliance on another party's promise that would otherwise be an unenforceable contract. See *Synergy4 Enters. v. Pinnacle Bank*, 290 Neb. 241, 859 N.W.2d 552 (2015). A claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise. *Weitz Co. v. Hands, Inc.*, 294 Neb. 215, 882 N.W.2d 659 (2016). A plaintiff claiming promissory estoppel need not show a promise definite enough to support a unilateral contract, but it must be definite enough to show that the plaintiff's reliance on it was reasonable and foreseeable. *Id.*

The Watkinses allege the letters Wells Fargo sent to them, coupled with Wells Fargo's past custom of allowing them to catch up on their payments, were promises on which it should have expected them to rely. The letters, which were attached to and incorporated in the third amended third-party complaint, made no promises of any kind. As we stated above, these letters merely noted that the payments on Watkinses' promissory note were past due and notified them that they may qualify for a loan modification.

Further, the deed of trust was an unambiguous contract that covers the issue for which the Watkinses seek damages, and therefore, they cannot recover under a promissory estoppel cause of action. When an unambiguous contract exists that covers the issue for which damages are sought, promissory estoppel is not a viable claim. See *Folgers Architects v. Kerns*, 262 Neb. 530, 633 N.W.2d 114 (2001). The deed of trust specifically allows for foreclosure after default, and it states, "[a]ny forbearance by [Wells Fargo] in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy." As a result, the Watkinses have failed to state a cause of action for promissory estoppel.

*(ii) Violation of Regulation X*

The Watkinses next allege that Wells Fargo violated regulations promulgated under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. §§ 2601-2617 (2012). The RESPA is a consumer protection statute designed to provide "greater and more timely information on the nature and costs of the settlement process" and to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601. The Bureau of Consumer Financial Protection issued Regulation X, codified as 12 C.F.R. § 1024, to implement the RESPA. 12 C.F.R. § 1024.1 (2011).

The Watkinses allege that Wells Fargo violated Regulation X by engaging in prohibited "dual-tracking" activities. "Dual-tracking" is the common name for the home financial service industry practice of pursuing a foreclosure action against a delinquent borrower while the borrower is attempting to obtain some loss mitigation option to prevent foreclosure. See Mitchel H. Kider, David M. Souders, and Sandra B. Vipond, Real Estate & Mortgage Banking, § 7:117 (2017). Regulation X prohibits dual-tracking under certain circumstances:

> (2) Application received before foreclosure referral. If a borrower submits a complete loss mitigation application during the pre-foreclosure review period . . . or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> (i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41 (f) (2016). Regulation X defines a "complete loss mitigation application" as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41 (b)(1).

Wells Fargo's letters, which were attached to the Watkinses' third amended third-party complaint and thus were incorporated therein, informed the Watkinses that the payments on their home loan were past due and that they may qualify for a loan modification. The Watkinses allege that they were "waiting on the Wells Fargo workers" to act pursuant to these letters. But they do not allege any facts suggesting that they submitted a complete loss mitigation application, as defined in 12 C.F.R. § 1024.41 (f), to Wells Fargo. Thus, the Watkinses have not alleged that Wells Fargo performed the dual-tracking activities prohibited under Regulation X.

The Watkinses also allege that Wells Fargo violated the provisions of Regulation X by failing to follow the "foreclosure avoidance procedure" required under Regulation X. They allege the "foreclosure avoidance procedure" imposed a duty on Wells Fargo to "make intervention on

behalf of borrower at an early stage of any delinquency," "establish and maintain both live and continuous contact with a borrower," and "handl[e] loss mitigation applications, whether written or oral." However, Regulation X states that it does not place such a duty on home debt servicers:

> Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. 1024.41(a). Thus, contrary to the Watkinses' allegations, Regulation X does not impose a duty on Wells Fargo to intervene on the Watkinses' behalf at an early stage of their delinquency or to establish and maintain continuous contact with them.

We find Regulation X does not prohibit the conduct the Watkinses allege, and as a result, they have failed to state a claim for which relief can be granted.

### (iii) Misrepresentation

The Watkinses allege that they are entitled to recovery for Wells Fargo's fraudulent misrepresentations to them. A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result. *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018). Neb. Ct. R. Pldg. § 6-1109 (b) (Rev. 2008) further provides, "In all averments of fraud, mistake, or undue influence, the circumstances constituting fraud, mistake, or undue influence shall be stated with particularity."

The Watkinses' third amended third-party complaint recites the elements of misrepresentation and alleges that the "repeated correspondence regarding the available foreclosure avoidance options" lead the Watkinses to fail to appreciate the seriousness of their past due accounts. It further alleges that the Watkinses "would have taken a different course of action" if the communications had been clear. But because the Watkinses were already obligated to make payments on their loan, they have alleged no act of reliance that would support a claim of misrepresentation. Further, as we discussed above, they did not allege that they took any action whatsoever based on Wells Fargo's communications with them. Finally, because the deed of trust permitted Wells Fargo to foreclose on the property if the Watkinses failed to pay, the Watkinses fail to allege any damages attributable to the representations made in Wells Fargo's letters. Thus, the Watkinses have failed to state facts that would support a cause of action for misrepresentation.

### (iv) Negligent Servicing

The Watkinses next attempt to allege a cause of action in negligence against Wells Fargo. In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect

the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Ecker v. E & A Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019).

The Watkinses allege that Wells Fargo provided them customer service in a "commercially reasonable manner" and that they had "reasonable expectations" that Wells Fargo would provide the same level of care throughout the life of the loan. They allege this course of conduct established a duty toward them. They also assert that borrowers owe a duty to their lenders to use due care in their dealings by virtue of the relationship between borrowers and lenders.

The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Cruz v. Lopez*, 301 Neb. 531, 919 N.W.2d 479 (2018). The existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. *Rodriguez v. Catholic Health Initiatives*, 297 Neb. 1, 899 N.W.2d 277 (2017).

According to the Watkinses' allegations, Wells Fargo's relationship with them is based on a loan contract. Because loan contracts are arms-length transactions between self-interested parties, a lender generally does not owe a duty to its borrower in conjunction with making loans. See *Nelson v. Production Credit Assn. of the Midlands*, 930 F.2d 599 (8th Cir. 1991) (finding no duty of care between lender and borrower in Nebraska law). See, also, *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991) (relationship between bank and borrower was not, by itself, sufficient to establish that bank owed fiduciary duty to borrower); *American Driver Serv. v. Truck Ins. Exch.*, 10 Neb. App. 318, 631 N.W.2d 140 (2001) (transactions where parties have competing interests are not compatible with fiduciary relationship). Thus, no legal duty supports the Watkinses' alleged negligence cause of action.

Further, under the Watkinses' allegations, the economic loss doctrine prevents them from recovering in tort law. The economic loss doctrine precludes tort remedies where economic losses are (1) caused by a defective product or (2) caused by an alleged breach of a contractual duty, where no tort duty exists independent of the contract itself. See *Thurston v. Nelson*, 21 Neb. App. 740, 842 N.W.2d 631 (2014). Economic losses are defined as commercial losses, unaccompanied by personal injury or other property damage. *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). The phrase "other property" means property other than the property that was the subject of the contract. *Thurston, supra*. Where only economic loss is suffered and the alleged breach is of only a contractual duty, then the action should be in contract rather than in tort. *Lesiak, supra*.

The Watkinses allege Wells Fargo owed them a duty only by virtue of their contractual relationship. The loss of their home in foreclosure proceedings is the only damage they allege in their third amended third-party complaint. Because that property was the subject of their contract with Wells Fargo, the losses they allege were merely economic losses. As a result, they have not pled sufficient facts to support a negligence cause of action.

*(v) Unjust Enrichment--Occupants and Claimants*

Finally, in their third amended third-party complaint the Watkinses "claim all of the rights and benefits to which they may be entitled under the provisions of Neb. Rev. Stat. § 76-301 *et seq.* [(Reissue 2018)]."

Section 76-301 provides, in relevant part:

> Any person claiming title to real estate . . . for which he [or she] can show a plain and connected title . . . shall not be evicted or turned out of possession of such real estate. His [or her] claim or title shall not be set aside or canceled by any court in any proceedings brought or commenced by any person setting up and proving an adverse and better title or claim to such real estate, until he [or she] shall be fully paid the value of all lasting and valuable improvements made upon such real estate by him [or her] or by those under whom he [or she] claims . . . .

Other than alleging that they did not waive their rights under these sections, the Watkinses provide no factual allegations explaining how these statutes apply. They do not allege that they made improvements to the property before it was foreclosed, let alone what value those improvements would have added to the property. Further, insomuch as the Watkinses may have made improvements to the property before the trustee sold it in foreclosure, those improvements enriched Homebuyers, which currently has title to the property, and not Wells Fargo, which foreclosed on the property to pay the Watkinses unpaid loan balance. As a result, the Watkinses do not make sufficient allegations to support a cause of action under § 76-301 et seq.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment in favor of Homebuyers because the Watkinses offered no evidence to contradict Homebuyers' right to possess the property. Further, after a de novo review of the Watkinses' third amended third-party complaint, we find the complaint did not state sufficient facts or law to support any of the 11 causes of action they attempted to allege against Wells Fargo, and we therefore also affirm the district court's dismissal of the third amended third-party complaint against Wells Fargo.

AFFIRMED.